**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x

In re:

JOSEPH J. MENDINGHALL, JR.

      Debtor.

--------------------------------------------------------------x

JOSEPH J. MENDINGHALL, JR.,

      Plaintiff,

    -against-

CITY OF MIDDLETOWN; CHARLES TRAN
PROPERTY, LLC; and CHESWOLD (TL), LLC,

      Defendants.

--------------------------------------------------------------x

Chapter 13

Case No. 24-35112 (KYP)

Adv. Pro. No. 24-09021 (KYP)

## <u>MEMORANDUM DECISION DISMISSING ADVERSARY PROCEEDING</u>

**APPEARANCES:**

LEGAL SERVICES OF THE HUDSON VALLEY
*Attorneys for the Plaintiff*
1 Park Place, Suite 202
Peekskill, NY 10566
By:    Tanya Dwyer, Esq.
          Of Counsel

CARLOS J. CUEVAS, ESQ.
*Attorney for Defendant Charles Tran Property, LLC*
1250 Central Park Avenue
Yonkers, NY 10704

PHILLIPS LYTLE LLP
*Attorneys for Defendant Cheswold (TL), LLC*
620 Eighth Avenue, 38th Floor
New York, NY 10018
By:    Nickolas Karavolas, Esq.
          Of Counsel

**HONORABLE KYU YOUNG PAEK**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Defendant Charles Tran Property, LLC ("CTP") has moved to dismiss ("Motion to Dismiss")[1] the Second Amended Complaint ("SAC")[2] of Plaintiff Joseph J. Mendinghall, Jr. ("Debtor").  Defendant Cheswold (TL), LLC ("Cheswold") joins the Motion to Dismiss,[3] and the Debtor opposes it.[4]  For the reasons stated, the Motion to Dismiss is GRANTED, and this adversary proceeding is DISMISSED.

## BACKGROUND

### A.    Procedural Background

Three prior decisions are pertinent to the matter before the Court.  First, on April 10, 2025, this Court issued a bench ruling dismissing the Debtor's claims in the prior iteration of the complaint.  (*See Transcript of April 10, 2025 Hearing* ("April 2025 Bench Ruling") (ECF Doc. # 54).)  There, the Debtor asserted claims under the United States and New York Constitutions ("Constitutional Claims") and under several

---

[1]    *See Charles Tran Property LLC's Memorandum of Law in Support of Motion to Dismiss Second Amended Complaint*, dated May 26, 2025 ("CTP Brief") (ECF Doc. # 66-6); *see also The Reply of Charles Tran Property LLC in Support of its Motion to Dismiss the Second Amended Complaint*, dated July 2, 2025 ("CTP Reply") (ECF Doc. # 79).  "ECF Doc. # _" refers to documents filed on the electronic docket of this adversary proceeding.  "ECF Main Case Doc. # _" refers to documents filed on the electronic docket of the Debtor's bankruptcy case.

[2]    *See Second Amended Complaint*, dated May 9, 2025 (ECF Doc. # 57).

[3]    *See Joinder of Cheswold (TL), LLC to Charles Tran Property LLC's Motion to Dismiss the Second Amended Complaint and Statement in Further Support of Motion*, dated June 18, 2025 ("Cheswold Joinder") (ECF Doc. # 75).

[4]    *See Declaration of Tanya Dwyer, Esq. in Opposition to the Joint Motion to Dismiss the Amended Complaint*, dated July 1, 2025 ("Debtor Brief") (ECF Doc. # 78).  At the hearing on the Motion to Dismiss, the Court granted permission to the Debtor and CTP to a make a supplemental submission, and each party submitted a corresponding letter.  *See Letter of Tanya Dwyer, Esq.*, dated Sept. 10, 2025 ("Debtor Supp. Letter") (ECF Doc. # 90), and *Letter of Carlos J. Cuevas*, dated Sept. 11, 2025 ("CTP Supp. Letter") (ECF Doc. # 92).

provisions of the Bankruptcy Code ("Bankruptcy Claims").  At the April 10, 2025 hearing, the Court ruled that the Constitutional Claims were barred under the doctrine of *res judicata* based on prior rulings of the Supreme Court for the State of New York, County of Orange ("State Court") (April 2025 Bench Ruling at 13:17-15:15) and dismissed the Bankruptcy Claims for failure to state a claim.  (*Id.* at 17:3-19:18.) However, the Court granted the Debtor's request to amend his complaint, but only to assert a constructive fraudulent transfer claim.  (*Id.* at 19:19-21:14.)  The Court subsequently entered an order consistent with the April 2025 Bench Ruling.  (*See Order Dismissing Amended Complaint and Granting Plaintiff's Cross Motion to File Second Amended Complaint with a Single Count for a Constructive Fraudulent Conveyance*, signed on Apr. 14, 2025 ("Order Dismissing Amended Complaint") (ECF Doc. # 53).)

Second, on March 24, 2026, this Court issued its *Memorandum Decision Dismissing Chapter 13 Bankruptcy Case, but Retaining Jurisdiction Over Adversary Proceeding* ("March 2026 Decision") (ECF Main Case Doc. # 230).[5]  In granting the Chapter 13 trustee's motion to dismiss the Debtor's bankruptcy case, the Court ruled that the Debtor had filed and maintained the bankruptcy in bad faith because the Debtor (i) was solvent, (ii) had only one unsecured creditor who was not actively seeking repayment of its $676.37 claim, (iii) filed three meritless proofs of claim, all of which have now been disallowed, to bolster the amount of debt in the case, (iv) was well-positioned to address his debts outside bankruptcy, and (v) filed a bankruptcy petition to collaterally attack a valid state court foreclosure judgment and sale.  (March 2026 Decision at 7-16.)  Notwithstanding the dismissal of the bankruptcy case, the Court

---

[5]     A copy of the March 2026 Decision is available on the Westlaw database at 2026 WL 805337.

retained jurisdiction over this adversary proceeding because the Debtor had appealed the Order Dismissing Amended Complaint to the United States District Court for the Southern District of New York ("District Court"), and the parties had fully briefed the instant Motion to Dismiss.  (*Id*. at 16-17.)

Third, on March 31, 2026, the District Court issued its *Opinion & Order* ("District Court Dismissal Order")[6] dismissing the Debtor's appeal from the Order Dismissing Amended Complaint for lack of appellate jurisdiction.  The District Court explained that the Order Dismissing Amended Complaint was not a final, appealable order because this Court had granted the Debtor leave to file an amended complaint containing a constructive fraudulent transfer claim (*i.e.*, the SAC).  (District Court Dismissal Order at 5-9.)

The Court assumes familiarity with the April 2025 Bench Ruling, the March 2026 Decision, and the District Court Dismissal Order.

**B.    The SAC and the Motion to Dismiss**

In general, the allegations in the SAC are the same as those alleged in the prior versions of the complaint as well as in other litigation before this Court and the State Court.  The Debtor failed to pay taxes owed to the City of Middletown ("City") for real property located at 14 Amchir Avenue, Middletown, New York ("Property"), and the City placed a tax lien on the Property.  (SAC ¶¶ 1, 11.)  In October 2019, the City sold the tax lien to Cheswold.  (*Id*. ¶¶ 1, 2, 27.)  In October 2020, Cheswold commenced a foreclosure action in State Court and obtained a foreclosure judgment against the Debtor in

---

[6]    A copy of the District Court Dismissal Order is available at ECF Doc. # 96 and on the Westlaw database at 2026 WL 880576.

February 2023.  (*Id.* ¶ 24.)  The State-Court-appointed referee conducted an auction for the Property in April 2023 and subsequently delivered a deed of conveyance for the Property to the winning bidder – CTP.  (*Id.* ¶¶ 4, 28; *see generally* March 2026 Decision at 2-4 (describing the foreclosure action and related litigation).)

As limited by the Order Dismissing Amended Complaint, the SAC contains a single cause of action – to avoid and recover the value of the Property as a constructive fraudulent transfer under section 548(a)(1)(B) of the Bankruptcy Code and section 273 of the New York Debtor and Creditor Law ("N.Y. DCL").  (SAC ¶¶ 1, 10, 31-41.) Importantly, the SAC identifies Cheswold as the initial transferee of the Property (*id.* ¶¶ 2, 21, 23, 27, 30, 35), and CTP as the subsequent transferee.  (*Id.* ¶¶ 28, 36; *see id.* ¶ 41 ("[The Debtor] asks this court to void the transfer to Cheswold and/or the subsequent transfer to [CTP] . . . .").)[7]

CTP filed the instant Motion to Dismiss on May 26, 2025, and the Court heard oral argument on September 23, 2025.  As stated above, the District Court dismissed the Debtor's appeal from the Order Dismissing Amended Complaint on March 31, 2026, thus restoring jurisdiction to this Court to decide the Motion to Dismiss.

## DISCUSSION

### A.   Standards Governing Motion to Dismiss for Failure to State a Claim

Motions to dismiss for failure to state a claim are governed by Federal Civil Rule 12(b)(6), which is made applicable to this adversary proceeding under Federal Bankruptcy Rule 7012(b).  "To survive a motion to dismiss, a complaint must contain

---

[7]      The Court confirmed with Debtor's counsel during oral argument that the SAC identifies Cheswold as initial transferee and CTP as subsequent transferee.

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

*Iqbal* outlined a two-step approach to decide a motion to dismiss. First, the court should identify "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient. *Id.* at 678. "Bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations and will not defeat the motion."[8] *N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC*, 720 F. Supp. 2d 254, 261 (S.D.N.Y. 2010) (quotation omitted). Second, the court should assume the veracity of all "well-pleaded factual

---

[8]   The SAC contains several allegations that are not well-pled. For example, the Debtor alleges that the State Court foreclosure proceeding was "illusory," contending that the title for the Property had passed to Cheswold before the commencement of such proceeding. (SAC ¶ 24.) However, the foreclosure judgment is now a final judgment, and the Debtor admitted that he "does not challenge the validity of the Judgment of Foreclosure and Sale here." (Debtor Supp. Letter at 2.) Further, the Debtor alleges that Cheswold acted as an "agent" for the City (SAC ¶¶ 28, 40), but this assertion is wholly unsupported.

allegations," and determine whether, together, they plausibly give rise to an entitlement

of relief.  *Iqbal*, 556 U.S. at 679.

## B.      Analysis

### 1.      The SAC Fails to Allege that a Transfer Occurred

Bankruptcy Code § 548(a)(1)(B) and N.Y. DCL § 273(a)(2) provide for the

avoidance of a "transfer" where, *inter alia*, the transferor received less than reasonably

equivalent value in return.  *See* 11 U.S.C. § 548(a)(1)(B); N.Y. DCL § 273(a)(2).[9]  Section

550(a) of the Bankruptcy Code provides for the recovery of the property transferred, or

the value of such property, from the (i) initial transferee, (ii) the entity for whose benefit

such transfer was made, or (iii) any subsequent transferees.  11 U.S.C. § 550(a).

However, avoidance of the initial transfer is a prerequisite to a plaintiff's recovery from

any of the enumerated entities in section 550(a).  *See id.* (permitting recovery "to the

extent that a transfer is avoided"); *accord Sec. Inv. Prot. Corp. v. Bernard L. Madoff

Inv. Sec. LLC* (*In re Madoff Sec.*), 501 B.R. 26, 33 (S.D.N.Y. 2013) ("[T]he Trustee

cannot recover a transfer unless that transfer is proved able to be 'avoided' against the

relevant transferee at least contemporaneously with the recovery action.").

As stated above, the Debtor's theory of the case is that Cheswold was the initial

transferee of the Property, and CTP was the subsequent transferee.  Thus, the Court

must analyze whether the Property was transferred to Cheswold.  Because it was not

alleged in the SAC, the Court will not consider whether the foreclosure sale to CTP was

---

[9]      Under 11 U.S.C. § 544(b), a bankruptcy trustee may assert a claim under state fraudulent transfer
law if there is an unsecured creditor who could pursue the action.  Further, under 11 U.S.C. § 522(h), a
debtor in bankruptcy may avoid transfers of otherwise exempt property that are avoidable by a trustee
under, *inter alia*, 11 U.S.C. §§ 544 and 548, if the trustee does not attempt to avoid those transfers.  *See* 4
COLLIER ON BANKRUPTCY ¶ 522.12[2][a] (16th ed. 2026).

the initial transfer subject to avoidance under the constructive fraudulent transfer

statutes.[10]

The Debtor relies on provisions in the Middletown City Charter ("Charter") to

support his theory that title in the Property passed to Cheswold.  Specifically, the SAC

quotes from two provisions of the Charter, which were in effect at the time of the alleged

transfer to Cheswold.  (SAC ¶¶ 19-20.)  Section 83(3) of the Charter generally provided

the holder of a tax lien with title to real property after the expiration of the redemption

period as follows:

> *After the expiration of the redemption period* as herein defined, if any part
> of the premises sold shall remain unredeemed, the Common Council shall
> give to the purchaser . . . a conveyance of the premises so remaining
> unredeemed, which conveyance shall be valid and effectual to convey all
> the right, title and interest which may have been sold in the manner
> aforesaid . . . .  The grantee named in any such conveyance may obtain
> possession of the real estate therein described, in the manner prescribed
> by law in relation to persons holding over demised premises, after the
> expiration of their terms, without consent of their landlords, *and said
> grantee, by virtue of such conveyance, shall acquire all the right, title and
> interest in the real estate therein described*, and the right to the
> possession of the same . . . .

(SAC ¶ 19 (quoting Charter § 83(3)) (emphases added).)  According to the Debtor, the

redemption period for the delinquent taxpayer is two years from the date of the tax lien

sale, but that period is extended to three years if the taxpayer is not notified of the tax

lien sale.  (SAC ¶ 18.)  Since the City sold the lien to Cheswold on October 11, 2019, the

Debtor asserts that Cheswold received title to the Property on either October 11, 2021 or

October 11, 2022.  (*Id.* ¶ 27.)

---

[10]     In the final paragraph of the SAC, the Debtor requests that the Court "void the transfer to
Cheswold and/or the subsequent transfer to [CTP]."  (SAC ¶ 41.)  However, the Court is unaware of any
applicable authority which provides for the avoidance of subsequent transfers, and the Debtor has not
cited any such authority.

8

However, section 93(4) of the Charter, which is also quoted in the SAC, enumerated specific requirements for the transfer of title to the tax lien holder as follows:

> Upon expiration of the redemption period and *completion of the procedures required herein*, and *upon execution by the City of a deed* to a tax-delinquent parcel to the City or to a qualifying purchaser of an unpaid tax lien, the City or qualified purchaser shall be seized of an estate in fee simple absolute in such parcel . . . .

(*Id.* ¶ 20 (quoting Charter § 93(4)) (emphases added).)  Thus, section 93(4) of the Charter specifies that three events must occur before title in the real property is transferred to the tax lien purchaser: (i) expiration of the redemption period, (ii) completion of procedures set forth in the Charter, and (iii) execution of a deed by the City to the purchaser.

Here, the Debtor fails to allege that the latter two requirements of Charter § 93(4) were satisfied.  The SAC does not state what procedures are set forth in the Charter, let alone allege that such procedures occurred.  More importantly, the SAC does not allege that the City executed a deed for the Property and delivered such deed to Cheswold.

Instead, the Debtor relies on two certificates the City delivered to Cheswold – one at the time of Cheswold's purchase of the tax lien and another at the end of the two-year redemption period.  (SAC ¶ 23.)  But these certificates, as described in the SAC, memorialized the transfer to Cheswold of the tax lien, not the Property itself.  (*Id.* ¶ 23 ("The recorded certificates [state] that [the City] transfers the certificate to Cheswold for $10 according to the [Charter], and sells, transfers, assigns, conveys, grants and releases unto Cheswold all right title and interest *in and to all real property taxes* . . . .") (emphasis added).)

9

Cheswold's status as a tax lien holder is also consistent with the events that followed. Cheswold commenced a foreclosure action in State Court and obtained a judgment of foreclosure. If Cheswold was the owner of the Property, there would be no need to commence a foreclosure action; it would instead commence an eviction proceeding.

Because Cheswold never held title to the Property, it was never a transferee of the Property. The Debtor's constructive fraudulent transfer claim fails for failure to identify a transfer under 11 U.S.C. § 548(a)(1)(B) and N.Y. DCL § 273(a)(2).[11]

### 2.   Insolvency

Constructive fraudulent transfer claims under the Bankruptcy Code and N.Y. DCL generally require that, at the time of the transfer, the transferor was either insolvent or in dire straits financially. *See* 11 U.S.C. § 548(a)(1)(B)(ii); N.Y. DCL § 273(a)(2)(i) – (ii). In the March 2026 Decision, the Court found that the Debtor is solvent and noted that his assets include a structured settlement with a face value of $313,264 as well as a judgment for unpaid wages with a face value of $100,000. (March 2026 Decision 9-11.)[12] The Court also noted that the only valid claim against the

---

[11]   The Court dismissed the constructive fraudulent transfer claim in the prior complaint for the same reason:

> Second, the debtor incorrectly identifies Cheswold as the transferee of the [Property]. . . . Although the redemption period has expired, the amended complaint does not allege that the procedure set forth elsewhere in the Middletown Charter for the transfer of title to the tax lien purchaser had occurred or that the City executed a deed in favor of Cheswold. Instead, the record shows that Cheswold commenced a foreclosure action, the foreclosure sale occurred, and the title was conveyed to [CTP].

(April 2025 Bench Ruling at 17:16-18-8.) Despite this ruling, the Debtor filed the SAC identifying Cheswold as the initial transferee.

[12]   The structured settlement and unpaid wage judgment are referenced in the SAC. (SAC ¶¶ 1, 11, 12.)

10

bankruptcy estate was a $676.37 tuition bill owed to SUNY Orange Community College. (*Id.*)

Nonetheless, the constructive fraudulent transfer statutes require the Court to analyze the transferor's solvency at the time of the transfer, not during the pendency of a bankruptcy case. Since the Debtor has failed to identify an avoidable transfer, determining solvency for purposes of the fraudulent transfer statutes is not possible.

## CONCLUSION

For the reasons stated, the Motion to Dismiss is GRANTED, and this adversary proceeding is DISMISSED. Counsel to CTP shall submit a proposed order consistent with this memorandum decision via the Court's eOrders system.

/s/ Kyu Y. Paek

**Dated: April 15, 2026**
**Poughkeepsie, New York**



_____
**Hon. Kyu Y. Paek**
**U.S. Bankruptcy Judge**